# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| VALERIE MCDOUGLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO.09-CV-289-WDS |
| | ) |
| OLIN CORPORATION, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**STIEHL, District Judge:**

Before the Court is defendant Olin Corporation's motion for summary judgment (Doc. 16) to which plaintiff has filed a response (Doc. 18) and defendant a reply (Doc. 19). The plaintiff seeks recovery for her discharge from Olin Corporation, claiming that her discharge was in retaliation for filing a workers' compensation claim. Defendant seeks summary judgment on the grounds that plaintiff's discharge was based on legitimate, non-retaliatory reasons.

## I. SUMMARY JUDGMENT STANDARDS

A district court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see also Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). The moving party initially bears the burden to demonstrate an absence of genuine issues of material fact, indicating that judgment should be granted as a matter of law. *See Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 294 (7th Cir. 1999) (citing *Celotex*, 477 U.S. at 323). Once a motion for summary judgment has been

made and properly supported, however, the non-movant has the burden of setting forth specific facts showing the existence of a genuine issue for trial. *See id.* In determining whether a genuine issue of material fact exists, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable and justifiable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In ruling on a motion for summary judgment, the Court will not resolve factual disputes, weigh conflicting evidence, or make credibility determinations. *See Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001); *see also Miranda v. Wisconsin Power & Light Co.*, 91 F.3d 1011, 1014 (7th Cir. 1996).

## II. FACTUAL BACKGROUND

The record reveals that plaintiff was employed by defendant beginning in 1984 and worked in the defendant's facility located in the City of East Alton, Illinois. She filed an application for benefits under the Illinois Workers' Compensation Act in November of 2005. In December of 2005, the defendant terminated the plaintiff's employment. Plaintiff asserts that her termination was in retaliation for filing her worker's compensation claim.

The defendant asserts that it terminated the plaintiff for a valid reason, namely because she could or would not work. Olin asserts that it instructed plaintiff to return to work, and did so before she filed her workers' compensation claim, and the decision maker did not know that she had filed a claim before she was terminated. Plaintiff asserts that defendant knew at the time of her discharge that she had been directed not to return to work by her doctors as the result of an on-the-job injury.

Plaintiff worked at several jobs while employed at Olin. During her employment, she had several leaves of absence. Between 1999-2000, she was off work for several (8-9) months for work-related carpal tunnel injury. She filed and completed a workers' compensation claim related to that

2

claim. From May of 2001 until January of 2002, she was on disability leave due to depression. She also was on short-term disability leave for depression from May 1, 2003 to June 9, 2003, and during that time was under the care of Dr. Joy Webster, a psychiatrist. In May of 2005, she began a third short-term disability leave for depression. Plaintiff asserts that in 2002 she suffered from a medical condition as a result of the primer she used during her employment. She further claims that in April of 2005 she filed a grievance that oral warnings she received about her absences were improper because her absences were related to her medical condition from the mix she had worked with at Olin.

Plaintiff's 2005 disability leave was certified, initially, by her general practitioner, Dr. Charles Earnshaw. Thereafter, Olin notified plaintiff that she needed to be seen by a psychiatrist. Plaintiff attempted to see Dr. Webster, but was refused an appointment because she had missed several prior appointments. She then saw Dr. Sanjay Nigam in August of 2005. Dr. Nigam released plaintiff to work in September of 2005 without any restrictions. Plaintiff did not return to work and told Olin that her general practitioner wanted to see her before she returned to work. Thereafter, Olin instructed plaintiff that she had an appointment with Dr. Wayne Stillings. On November 2, 2005, she was evaluated by Dr. Stillings and he released her to work without restrictions.

After Dr. Stillings issued his release, Olin instructed plaintiff to return to work multiple times. Plaintiff acknowledged in her deposition that Olin instructed her to return to work. On November 8, 2005, Olin's leave administrator, Karen Vogan, advised plaintiff that Dr. Stillings had authorized her return to work, and she was advised to return within five days. She was also advised that failure to return to work could result in termination. On November 14, 2005, plaintiff met with Nurse Nancy Bundridge and was advised that she was expected to return by November 16, 2005.

3

Plaintiff stated to Bundridge that she was going to see a lawyer. On November 19, 2005, plaintiff filed a worker's compensation claim, including her claim of chemical exposures, which Olin received on November 23, 2005. On November 28, 2005, she was again advised that she was to report to work the next day. When plaintiff failed to report to work on November 29, 2005, she was sent a letter by Olin's Manager of Labor Relations, Bill Moore, that she was approved to return to work by Dr. Stillings, and was to do so within five days. Plaintiff was terminated by letter dated December 13, 2005, after she failed to return to work as expected. The record includes Moore's declaration that he terminated plaintiff without knowledge of the filing of her workers' compensation claim (Declaration of Moore, Ex. B, Doc. 17).

There is evidence in the record that on November 14, 2005, after Bundridge met with plaintiff she sent Moore an email indicating that the plaintiff had informed Bundridge that she was going to see a lawyer. She also stated in her deposition that the last conversation she had with the Olin Medical staff she was told that they would "get back to her" about returning to work, and that she gave them off work slips for December 5 and 7, 2005. Plaintiff has introduced exhibits 16 and 17 in her response to the summary judgment motion. These are doctors slips, one from her general practitioner, Dr. Earnshaw, that she should not return to work, dated December 5, 2005, and the other from Dr. Becky A. Pew, a psychiatrist, dated December 7, 2005, stating that she should not return to work due to depression.

Plaintiff testified that she was certain that Moore knew of her workers' compensation claim, but also acknowledged that she had no direct evidence that he actually knew of the filing of the claim other than the fact that he signed her termination slip (McDougler Depo p. 132-33, Doc. 18, ex. 21).

# III. DISCUSSION

Plaintiff's claim is that she was discharged as retaliation for filing her workers' compensation claim, and that defendant did not have a legitimate reason to terminate her and knew of her pending claim. To succeed under Illinois law on a retaliation claim, plaintiff must establish that she was discharged in retaliation for her actions (filing the worker's compensation claim) in violation of a clear mandate of public policy. *McCoy v. Maytag*, 495 F.3d 515, 520-21 (7th Cir. 2007). Firing an employee for exercising rights to file workers' compensation is, indeed, a long-recognized violation of Illinois public policy. *See, Kelsay v. Motorola, Inc.,* 384 N.E.2d 353, 357 (Ill. 1978).

A retaliation claim based on workers' compensation has three basic elements: 1) that the plaintiff was the employee of the defendant before her accident; 2) that she exercised her rights under the Workers' Compensation Act; and 3) that her discharge was casually connected to filing that claim. *Dotson v. BRP U.S. Inc.,* 520 F.3d 703, 707 (7th Cir. 2008). Clearly, in this case the only element in dispute is the third element. Here, plaintiff cannot show that she was terminated for filing her workers' compensation claim because she testified that Olin terminated her based on the independent doctor's opinion that she could work, and because she believed that the termination was incorrect because her general physician and her new psychiatrist had restricted her from working.

> Q. . . . My question is do you think Olin should have let you remain employed for as long as your personal doctor says "Valerie cannot go to work"?
> A. I believe Olin should take into consideration that the judgment is true because of the oath he took as a doctor, and they should respect that.
> Q. Again, that wasn't my question. Do you think Olin should have kept you employed for as long as your personal doctor says "Valerie is too sick to work"?
> A. Yes, sir.
> Q. When were you well enough to come back to your position at Olin if you hadn't been fired?
> A. I don't know, sir, because at that time I was told to – I was seeing Dr. Pew, and I just got started with her. To be honest with you, I was getting – I was becoming beter, and after realizing and just the counseling that I've had from the previous doctors,

5

I was a much better person and I was well onto recovering more so than I was not recovering.
    Q.          So the termination letter was December 13, 2005. Do you think you would have been ready to come back to work December 14, 2005?
    A.          I believe I would have been given with the treatment from Dr. Pew and the counseling at any given time. . .

(Plaintiff Deposition, pp. 127-28)

    Q.          On November 29th, 2005, if Olin's medical department had said, "Hey, Valerie, it's okay with us for you to go back and work in the department" would you have gone?
    A.          I can't say because I don't know.
    Q.          Were you able to work at that time?
    A.          No, I wasn't.

(Plaintiff's Deposition, p. 115).

"A plaintiff must prove that his discharge was causally connected to his exercise of rights under the Workers' Compensation Act." *Hess v. Clarcor Incorporated,* 603 N.E.2d 1262 (Ill.Ct.App.1992). "Causality is lacking if the basis for the discharge is valid and nonpretextual." *Id.* "Thus, an employer may fire an employee for excessive absenteeism, even if the absenteeism is caused by a compensable injury." *Id.* (emphasis added). Further, "[a]n employer is not proscribed from discharging an employee who is physically unable to perform his work." *Id.*; *See, Hartlein v. Illinois Power Co.,* 601 N.E.2d 720 (1992).

Here, Olin has established a non-retaliatory motive, that plaintiff did not return to work after examination and release to return by an independent doctor. Olin instructed plaintiff to return to work several times before she filed for worker's compensation. Plaintiff does not explain why she did not respond to the requests from Olin to return to work before her termination.[1] Notably, Olin made several efforts to return plaintiff to work both before and after

---

[1] Plaintiff reported to the medical department at Olin on November 29, 2005, but did not actually go to to work. Plaintiff asserts that the medical department at Olin did not direct her to return to work on that date or on December 7, 2005. Plaintiff stated, "She never told me not to go to work, but she didn't tell me to go to work after

she filed her workers' compensation claims, which show lack of retaliatory motive. *Marin v. American Meat Packing, Co.*, 562 N.E.2d 282, 286 (Ill. App. Ct. 1990). "Evidence that those responsible for plaintiff's termination knew [she] intended to file a worker's compensation claim is 'essential' to a retaliatory discharge action." *Id.* (*quoting, Mercil v. Federal Express Corp.*, 664 F.Supp. 315, 318 (N.D. Ill. 1987)).

Plaintiff's statement that she was going to "see a lawyer" which was passed along to Moore is not the same as notice and knowledge that she had actually filed a complaint. Many people, when confronted with a situation that they do not like, respond with threats to see an attorney. Some of those are actual, some are just idle threats. This is not enough to show retaliatory motive by defendant. Moore testified that he made the decision to terminate plaintiff after she failed to return from leave after being directed to do so by the medical department at Olin. There is nothing in this record to amount to retaliatory motive. Plaintiff was not able to return to work, and did not do so, and did not ask for a different assignment. An inability to work, coupled with excessive absenteeism, even if that "absenteeism is caused by a compensable injury" is a grounds for termination. *Hartlein*, 601 N.E.2d at 728.

## IV. CONCLUSION

Accordingly, the Court **FINDS** that the defendant has established a basis for the plaintiff's termination. Plaintiff has not established causation between her filing of the workers' compensation claim and the "chain of events" that led to her discharge. *Casanova v. American Airlines*, 2010 WL 3035493, slip op at *3 (7th Cir. Aug. 5, 2010). There is nothing in this record to show that anyone at Olin "perform[ed] an act motivated by [discriminatory] animus that [was]

---

seeing her either." (Plaintiff's deposition, p. 115) Although there may not have been an oral directive, she had received several return to work letters as detailed above before that December 7th meeting.

*intended* by [that person] to cause an adverse employment action." *Staub v. Proctor Hospital*, 131 S. Ct. 1186, 1194 (2011).

Put simply, there is nothing in this record to establish that the decision to terminate plaintiff was 'motivated by hostility" toward her filing a workers' compensation claim, or her *intent* to file such a claim. *Id.* Rather, the decision to terminate her was based upon two independent doctors of psychiatry determining that her reason for being off work was no longer a factor, her excessive absenteeism and her inability to return to work.

Defendant's motion for summary judgment is **GRANTED** on all claims. Judgment is entered in favor of defendant, Olin Corporation, and against plaintiff, Valerie McDougler, on all claims. Each party shall bear its own cost. The Clerk of the Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATE: 23 March, 2011**

                                            **/s/ WILLIAM D. STIEHL**
                                                **DISTRICT JUDGE**